MACK and others, Appellants, vs. BENSLEY, Respondent.

*March 31— April 28, 1885.*

DEED: WATER POWER: EVIDENCE. *(1) Latent ambiguity. (2) Evidence of transactions with deceased person. (3) Deed of water power construed. (4) Riparian rights: Pollution of water. (5) Evidence as to head of water: New trial.*

1. A mill site was described in a conveyance as "commencing at a point fifty links east of the bank of the slough," etc. There were natural objects which would satisfy the remainder of the description whether such starting point were taken to be fifty links east of the *east* bank or east of the *west* bank of the slough, but, under the circumstances, the latter construction is held to be the correct one.

Mack and others vs. Bensley.

2. The grantee of land cannot testify as to transactions with his deceased grantor in order to remove a latent ambiguity in his deed, when the opposite party also claims title under such decedent.

3. A deed of a mill site gave the right to build and maintain dams on the grantor's land not included in the conveyance, etc., "hereby intending to convey all the water power where the old Whitney saw-mill was located," etc. At the time of the conveyance the grantor owned another water power and mill higher up on the same stream. *Held*, that such deed conveyed the right to all the water power which could be created and utilized where the Whitney mill was located, without injury to the upper mill property, and was not restricted to the water power as it had theretofore been utilized at the Whitney mill; and, as incident to such right, the location of a guard-lock or dam on the lands not conveyed might be altered, if necessary, provided such alteration did not injuriously affect the upper mill property.

4. A lower riparian proprietor has no right to remove a slab wharf which had been maintained by his grantor on the stream above the land granted, and was used in connection with said grantor's mill, even though such wharf by decay pollutes the water and renders it unfit for manufacturing purposes in which its use is desired.

5. Testimony as to the head of water which could be created and utilized at a certain point without injury to an upper mill, is *held* to be so indefinite and unsatisfactory as not to warrant any judgment; and a new trial is ordered, with the suggestion that experts be appointed to determine such fact by surveys.

APPEAL from the Circuit Court for *Wood* County.

In 1866 one Orestes Garrison, who was then the owner of the premises occupied by the parties to this action, conveyed to the plaintiff *Lyon* a certain mill property and water power situated on a slough of the Wisconsin river in Wood county, such slough lying to the west of the main channel of the river and being separated therefrom by an island. The description in the deed of the premises conveyed was as follows:

"Commencing at a point fifty links east of the bank of the slough on the section line between sections 8 and 17 in township No. 22 north of range No. 6 east, and thence west along the section line fifty links to the bank of the

slough; thence up along the bank thereof three chains and fifty links to a large rock; thence east two chains; thence a southerly course to the place of beginning, containing seventy rods of ground; also hereby granting to said party of the second part, his heirs or assigns, the right of way to use in common with said party of the first part, his heirs or assigns, as a passage-way and for the purpose of a mill yard and mill buildings, all that land lying east of Main street and the south half of block No. 4 in the village of Centralia, and the west bank of the slough; also hereby granting to said party of the second part the right to build and maintain a dam or dams at the upper end of the island, and also to build and maintain a dam at the lowest place in said island below said described premises, also to construct and maintain a road on the west bank of said slough below said premises; hereby intending to convey all the water power where the old Whitney saw-mill was located, excepting and reserving forever a free passage-way over the dam for the purposes of running lumber without hindrance or delay to said party of the first part, his heirs or assigns."

*Lyon* constructed a mill and dam across the slough, substantially on the site of the old Whitney saw-mill, and also a guard-lock near the head of the slough above his mill to protect it from damage by high water, etc., and also built a wing-dam into the river at the head of the island to cause more water to flow into the slough.

At the time of the conveyance to *Lyon*, Garrison owned and operated a saw-mill on the west side of the river at the head of the slough, which was supplied with water by a canal, and had erected, a short distance below his mill on the west side of the slough, a slab filling or wharf which projected slightly into the slough and was used in connection with the mill for piling and rafting lumber.

*Lyon* continued to occupy the premises so conveyed to him until May, 1882, when he leased the same, with the

Mack and others vs. Bensley.

rights appurtenant, to the other plaintiffs, *Mack* and *Spencer*, who went into possession and have continued therein as his tenants. Prior to that time the defendant had succeeded to all the rights of Garrison which were not conveyed to *Lyon.*

The complaint alleges that the purpose of the plaintiffs in leasing the premises was to erect and operate on said water power an extensive pulp mill which would and will require all the water properly belonging to said water power and premises; that the defendant or some person under whom she claims, as the owner of the saw-mill at the head of the slough, has piled in said slough on the west shore thereof a large quantity of slabs and other material, for the purpose of piling lumber thereon, thereby greatly diminishing the capacity of the slough; that for the full enjoyment of the amount of water and power to which they are entitled it is necessary to repair and build up the dams constructed by the plaintiff *Lyon,* and to remove the guard-lock constructed by him to a point further down the slough and nearer the *Lyon* mill; that such changes will not injure the defendant or interfere with the use of her mill; that for the purpose of enlarging the slough to its natural capacity the plaintiffs, with the consent of the defendant's agent, removed a large amount of the slabs aforesaid from the bed of the slough, at great expense, but that the defendant now threatens and has commenced to replace said slabs in the bed of the slough; that in June, 1882, the defendant notified the plaintiffs not to build a dam across the slough higher than that built by *Lyon,* and not to change the position of the guard-lock across the slough, and not to raise the dam at the head of the island; and that the plaintiffs fear that the defendant will attempt by force to prevent them from making such improvements. The prayer is that the defendant be enjoined from putting the slabs

back into the slough, and from interfering with the proposed improvements.

The answer alleges that the slab wharf was built by Garrison, before the conveyance to *Lyon*, to prevent the washing away of the bank and to level up the premises, and that it does not interfere with or diminish the flow of water in the slough; and denies that the defendant has threatened or commenced to put any slabs or other material into the slough.

It also alleges, by way of counterclaim, the former ownership by Garrison of all the premises in question; that in the slough about six rods above and north of the section line between sections 8 and 17, there was and is a fall and an opportunity to create and utilize a water power; that prior to 1866 there had been a saw-mill located at that point, known as the Whitney mill, and a dam across the slough at said mill; that said mill and water power was owned and operated by Garrison, but was abandoned by him in 1860 or 1861, at which time he built and put in operation the mill at the head of the slough now owned by the defendant. It alleges further that the conveyance from Garrison to *Lyon* in 1866 is so indefinite and uncertain as to be void; that such conveyance does not, in any event, confer any rights in or control over the slough or either bank thereof above a point or points on the banks thereof fourteen rods (three chains and fifty links) above the section line; that from such point to the head of the slough and defendant's mill is more than 330 feet; that the dam and mill built by *Lyon* were about five rods above said section line, and that the guard-lock was built by him, under a verbal license from Garrison, but a short distance below the defendant's mill; that the dams built by *Lyon* created and utilized a water power as great as was ever used at the Whitney mill, and were as high as any dam upon the

slough at the time the Whitney mill was standing; that in May or June, 1882, the plaintiffs *Mack* and *Spencer* entered into possession of the *Lyon* mill and commenced to construct a new dam about ten feet high and at least three feet higher than any dam had ever been built there before, and also to construct a guard-lock across the slough on defendant's land more than fourteen rods above the section line, and also to increase the height of the wing dam at the head of the island and to enlarge the slough beyond its natural width by cutting away the banks near the head thereof; and that such alterations will cause the water to flow back into and around the defendant's mill so that it cannot be used. Judgment is asked construing the conveyance from Garrison to *Lyon*, and enjoining the plaintiffs from making such changes in the dams, guard-lock, and banks of the slough.

The court found the facts to be substantially as alleged in the answer; and that the dams erected by *Lyon* produced a water power not exceeding eight and one-half feet head, and that the plaintiffs have raised such dams so as to create a ten foot head at the *Lyon* mill, thereby causing the water to flow back and interfere with defendant's mill. As conclusions of law the court found, among other things, that the deed from Garrison to *Lyon* conveys seventy square rods of ground, commencing on the section line fifty links east of the *west* bank of the slough, and running as therein described. "It conveys the water power where the old Whitney mill stood, to the extent that the same was used when the Whitney mill was operated. It conveys the right to build and maintain a dam at the plaintiffs' mill, and a dam or dams at the head of the island sufficient to create and utilize the water power to the extent above indicated. The grant of the right to maintain a dam or dams at the head of the island includes the right to maintain a guard-lock (which is a dam) at that point to prevent the flow of

water into the slough.   It did not convey the banks nor the bed of the slough which is more than fourteen rods above the section line, nor the right to place any guard-lock or other obstruction therein.   .   .   .   It did not con-vey the right to remove the slab wharf or embankment as the same existed at the date of the conveyance from Garri-son to *Lyon,* which wharf was no obstacle to the flow of water in the slough and no injury to the plaintiffs' water power.   It did not convey the right to enlarge the slough by removing the natural banks nor by lowering the natural bed thereof."

The court further found that the defendant has the right to restore the slab wharfing to the condition it was in at the date of the conveyance to *Lyon,* and to have the guard-lock removed to its original location, and also to have plaintiffs' dam or dams so lowered as not to raise over eight and one half feet head at their mill.

From the judgment entered in accordance with the find-ings the plaintiffs appealed.

*Geo. W. Cate,* of counsel, and *Geo. L. Williams,* attorney, for the appellants.

For the respondent there was a brief by *Gardner & Gaynor,* attorneys, and *L. P. Powers,* of counsel, and the cause was argued orally by *Mr. Gardner* and *Mr. Powers.*

COLE, C. J.   The court below fixed the starting point in the description of the seventy square rod tract of land on the section line fifty links east of the west bank of the slough, and we are disposed to adopt that construction as correct.   There is difficulty in ascertaining the subject of the grant in this part of the deed, owing to the ambiguity of the language used when applied to the extrinsic facts.   The deed describes the boundary of this tract as " commencing at a point fifty links east of the bank of the slough on the section line, etc.; thence west along the section line fifty

links to the bank of the slough; thence up along the bank thereof three chains and fifty links to a large rock; thence east," etc. Now it so happens that there are natural objects which will satisfy this description, whether the starting point be on the section line fifty links east of the west bank of the slough, or fifty links east of the east bank thereof, for there is a large rock at the requisite distance on either bank of the slough to meet the second call. It is this uncertainty in the description, when applied to existing natural objects, which gives room for doubt as to whether the starting point should be on the section line fifty links east of the west bank of the slough, or fifty links east of the east bank. Orestes Garrison, under whom both parties claim title, being dead, his grantee, the plaintiff *Lyon*, was not a competent witness to remove the latent ambiguity in the language of the deed. But we think it more rational, under the circumstances, to adopt the view of the learned circuit court on this point.

The next description grants certain rights of passage-way in land lying adjacent to the west bank of the slough, and requires no comment. Then follows the grant of the right to build and maintain a dam or dams at the upper end of the island; also to build and maintain a dam at the lowest place in said island, below said described premises, ". . . hereby intending to convey all the water power where the old Whitney saw-mill was located, excepting and reserving forever a free passage-way over the dam for the purpose of running lumber," etc. It is necessary to determine what rights and privileges are conveyed by this clause. On the part of the plaintiffs it is insisted that it grants and conveys the water power of the old Whitney mill, and all the rights, privileges, and easements which attached to that water power in the hands of Garrison at the date of the conveyance, which were essential to the most valuable use of such power, including the right to build and maintain

dams, guard-locks, and other structures within and on the banks of the slough, necessary to the development and use of such power, subject only to the restriction or condition that the works should not interfere with or impair the use and enjoyment of defendant's mill. We think this position is, in the main, sound. Grants of this nature are to be so construed as to substantially secure all the rights which appear to have been contemplated by the parties. About this there can be no dispute. In view of that fact we are not prepared to say that the grant in this case was restricted to the extent the water power had been used at the Whitney mill when it was operated. Whatever water power might be created or utilized at the place where the old Whitney mill stood, including, of course, the right to build dams at the head of the island, and at the plaintiffs' mill, to such a height as would be most beneficial to the grantee, was conveyed; but subject, as we have said, to the condition that the full enjoyment of defendant's mill was not to be impaired. Therefore we think the plaintiffs had the right to change the location of the guard-lock in the slough, if necessary for the security of their mill, providing they did not thereby prejudice defendant's rights; and though the new guard-lock or dam is constructed on a different site from the old one which *Lyon* built, and is more than fourteen rods from the section line, still, if in its present location it does not injure the defendant, she has no ground to complain on that account. We do not think the position of the guard-lock was deemed important by the parties to the conveyance, and it would be an unreasonable construction of the grant to hold that when it was once located it could not be changed to another point on the slough. The water power where the old Whitney mill stood, with the privilege of maintaining the dams designated, were doubtless the important subjects in the contemplation of the parties. The court found that the new guard-lock constructed by

Mack and others vs. Bensley.

the plaintiffs did not in any way injure the defendant in the use of her mill or mill property, but gave the plaintiffs a more valuable use of their mill property. This conclusion is surely warranted by the evidence. Therefore, as the change in the guard-lock does not injuriously affect the defendant's rights, she has no reason to complain of it; because the grant of the water power carried, as an incident, the right to build the guard-lock or dam where it would make the water power most beneficial, providing nothing was done which prejudiced in any manner the defendant in the use of her mill property.

The plaintiffs claim the right to remove the slab wharf or filling on the west bank of the slough, below the defendant's mill, in order to enlarge the channel and to increase its capacity to hold and carry forward all the water needed for the operation of their mills. We do not think they have any right to do this against the objection of the defendant. This slab wharf could not diminish the volume of water which would flow in the slough, because the testimony shows that the channel at the head of the slough is narrower than at the place where the wharf is built. The slab wharf or filling does not extend far into the channel, and from the nature of things cannot materially impede the flow of water in the slough. But were it otherwise, it is a sufficient answer to the plaintiffs' claim of the right to remove the slab wharf, that this structure existed when Garrison made his conveyance. The slab wharf is shown to be convenient for the full enjoyment of defendant's mill; it is used to pile lumber upon, and to facilitate rafting it. The defendant has the right to maintain it as an essential part of her mill property, and the attempt of the plaintiffs to remove it was wholly unauthorized. If the slab wharf, by decay, pollutes the water going to their mill, rendering it unfit for use in the manufacturing of paper pulp, that is

their misfortune.   They certainly have no  right to remove
it against the wish of  the defendant.

We have construed the grant as giving the plaintiffs  the
right to all the water power which could be created and
utilized where the Whitney mill was located, without injury
to the defendant's property.   The court below held that by
the system  of  dams which  had been  constructed  and was
maintained at the head of  the island, and by  the new
guard-lock, a greater water power was  created than was
ever used at the Whitney mill.   The court found that the
water power at the Whitney mill never exceeded eight and
a half  feet head, and it ordered that the dams be so lowered
as not to raise a greater head than this.   Now, we consider
the evidence on this branch of the case as too indefinite and
unsatisfactory to warrant any judgment in regard to it.
The witnesses who testify on the subject had not made any
measurements or taken any levels, and their opinions as to
the head of  water amount to but little more than  guesses.
Accurate surveys should be made, and  levels taken, before
any safe conclusion can be reached upon this important
point.   Nothing of the kind was done, and the fact as to
what head of water can be created and utilized by the sys-
tem of dams above mentioned, without injury to the de-
fendant's mill property, is left in doubt and uncertainty.
We therefore think there should be a new trial to de-
termine this question.   And we suggest to the learned cir-
cuit court that in order to ascertain what head can be
created and utilized at the plaintiffs' mill without injury to
the defendant by flooding or otherwise, that experts or
hydraulic engineers be appointed to make such surveys and
take levels, so that this fact can be determined with exacti-
tude or reasonable certainty.

*By the Court.*— The judgment is therefore reversed, and
a new trial ordered for that purpose.